IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

VERNON J. LEFTRIDGE,

    *Plaintiff*,

v.                                    Civil Action No. ELH-11-3499

KELLY MATTHEWS, *et al.*,

    *Defendants*.

**MEMORANDUM OPINION**

Vernon J. Leftridge, the self-represented plaintiff, has filed suit arising from an incident on December 1, 2008, in which he and his brother, Sylvontae Bishop, were subjected to a traffic stop by a Wicomico County, Maryland sheriff's deputy on the basis of a "defective brake light" and, during the traffic stop, were allegedly "subjected to harassment, sexual harassment, several searches and strip searches" by several Wicomico County sheriff's deputies and Maryland state troopers, as well as a vehicular search conducted without consent or probable cause. Complaint at 2-3, ¶ 13 (ECF 1). Mr. Leftridge, who is African-American, complains that he was a victim of racial profiling, *id.* ¶ 7, and has sued Mike Lewis, the Sheriff of Wicomico County; Kelly Matthews, a Wicomico County sheriff's deputy; several other John or Jane Doe defendants who are law enforcement officers with the Wicomico County Sheriff's Department; and three additional John Doe defendants, who are Maryland state troopers.[1] All of the defendants have been sued in both their official and individual capacities.

_____

[1] Mr. Leftridge initially filed suit against thirteen Doe defendants, without naming any particular defendant. *See* Complaint ¶ 4. In response to an Order to name a defendant who could "be served with the complaint and can provide the names of the persons involved in the incident described," ECF 4, plaintiff named Sheriff Lewis, *see* ECF 5, and Deputy Matthews (who allegedly was the deputy who initiated the stop). *See* ECF 6.

One of the Doe defendants, specifically Doe #9, is a police dog utilized by the Wicomico

Mr. Leftridge's complaint contains four counts: violation of 42 U.S.C. § 1981 (Count I); violation of the Fourth Amendment (Count II); violation of the Equal Protection Clause of the Fourteenth Amendment (Count III); and a claim, which seems to be duplicative of the others, alleging "racial profiling and racial harassment because of his race and color, in violation of the 1866 Civil Rights Act and all applicable federal statutes that prohibits violation of rights while acting under color of law to the US Constitution" (Count IV). *Id.* ¶ 18.  Counts II, III, and IV all invoke the private right of action provided by 42 U.S.C. § 1983.  Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, and costs.  *See* Complaint ¶¶ 15-18.

Sheriff Lewis and Deputy Matthews (collectively, "defendants")[2] have filed a "Motion to Dismiss or, in the Alternative, for Summary Judgment" (ECF 18), as well as a memorandum in support (ECF 18-1) (collectively, "Defendants' Motion"), which plaintiff opposes (ECF 22).[3] Defendants contend that plaintiff's claims are barred by the doctrine of res judicata, because Mr. Leftridge and Mr. Bishop, through counsel, filed a previous lawsuit involving the same claims emanating from the same traffic stop, which was dismissed, with prejudice.  *See Sylvontae J. Bishop & Vernon J. Leftridge, Jr. v. Mike Lewis & Dept. of Md. State Police*, Civ. No. WMN-10-3640 (D. Md.) ("*Leftridge I*").  Also pending are a flurry of motions filed by plaintiff seeking default judgment, *see* ECF 23 & 31; a "protective order," *see* ECF 28; pretrial discovery or disclosure of information, *see* ECF 27 & 30; and contempt and sanctions under Fed. R. Civ. P.

---

County Sheriff's K-9 unit.  The claim against the dog will be dismissed.  *See, e.g.*, *Dye v. Wargo*, 253 F.3d 296, 299-300 (7th Cir. 2001) (holding that "a [police] dog is not a proper defendant in litigation under § 1983").

[2] Sheriff Lewis and Deputy Matthews seek dismissal of the claims against themselves as well as those against the Doe defendants.  In light of the result I reach, I need not resolve the issue of their authority to seek dismissal of parties who have yet to appear.

[3] I have also considered defendants' Reply (ECF 24) and plaintiff's Surreply (ECF 29).  Although the Surreply was filed without leave of court, in violation of Local Rule 105.2(a), I have considered it in light of plaintiff's self-represented status.

11, *see* ECF 21.  Defendants have opposed these motions.  *See* ECF 25, 26, 32.

No hearing is necessary to rule on the pending motions.  *See* Local Rule 105.6.  For the reasons that follow, Defendants' Motion will be granted in part and denied in part, and plaintiff's motions will be denied.

## Background

On December 28, 2010, Mr. Leftridge and Mr. Bishop, through counsel, filed their complaint in *Leftridge I*, and named as defendants Sheriff Lewis, in both his individual and official capacities, and the Maryland State Police ("MSP").  They asserted substantially the same factual allegations arising out of the traffic stop of December 1, 2008, as are contained in Mr. Leftridge's current complaint.  *See Leftridge I*, ECF 1.  The complaint contained two counts: discrimination on the basis of race, in violation of the Civil Rights Act of 1866, codified as amended at 42 U.S.C. § 1981 (Count I); and a claim under 42 U.S.C. § 1983, based on violations of the Fourth, Thirteenth, and Fourteenth Amendments (Count II).  *See id.*

The MSP and Sheriff Lewis filed motions to dismiss.  *See Leftridge I*, ECF 5 & 6.  The MSP argued that, as an agency of the State of Maryland, it was entitled to Eleventh Amendment immunity from suit and was not a "person" subject to suit under § 1983.  *See Leftridge I*, ECF 6 (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989)).  Sheriff Lewis argued that, in his official capacity, he could not be sued under § 1983, pursuant to the Supreme Court's holding in *Will*.  *See Leftridge I*, ECF 5, at 6-7.  As to the claims against the Sheriff in his individual capacity, Lewis maintained that the complaint did not allege his personal involvement in any of the conduct alleged by plaintiffs, and that § 1983 does not recognize the respondeat superior theory of vicarious liability.  *See id.* at 7 (citing *Monell v. Dept. of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978), and *Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977)).

In response to the motions, plaintiffs filed an Amended Complaint in which they added the "Wicomico County Sheriff's Department" as a defendant, and alleged that defendants "stopped the plaintiffs as a part of their pattern and practices of stopping African-American males who drive through the state of Maryland for purposes of searching for drugs and criminal activity even though they had no probable cause to engage in such illegal stop searches [sic] and arrests."   *See Leftridge I*, ECF 7 at 7.   Plaintiffs also added a third count, alleging violation of Title VI of the Civil Rights Act of 1964, codified as amended at 42 U.S.C. §§ 2000d *et seq.*, which prohibits racial discrimination, among other things, by recipients of "Federal financial assistance."   The alleged federal funding "hook" for the Title VI claim was highway maintenance funding through the United States Department of Transportation.   *See Leftridge I*, ECF 7, at 10.   Defendants again moved to dismiss, and the motions were fully briefed.   *See Leftridge I*, ECF 9, 10, 13, 14, 15, 16.

On May 4, 2011, Judge William M. Nickerson issued a Memorandum and Order (*Leftridge I*, ECF 20 & 21), granting the motions to dismiss.   Judge Nickerson ruled that the Wicomico County Sheriff's Department was not a legal entity capable of being sued, *see Leftridge I*, ECF 20 at 4, and that the plaintiffs' § 1981 and § 1983 claims against the MSP and Sheriff Lewis in his official capacity were barred by Eleventh Amendment immunity.   *See id.* at 4-6, 8.   As to the Title VI claim, Judge Nickerson held that Sheriff Lewis was not the proper defendant, either in his official or individual capacity, because federal "funds would be received by a governmental agency and not by an individual," and therefore "'the proper defendant in a Title VI case is an entity rather than an individual.'"   *Id.* at 8 (citation omitted).   With respect to the MSP, Judge Nickerson opined that plaintiff's Title VI claim that "law enforcement agencies would be receiving federal highway *maintenance* funds . . . skirt[ed] the line of plausibility."   *Id.*

at 7 (emphasis in original).  He also determined that plaintiffs' § 1981 and § 1983 claims as to supervisory liability against Sheriff Lewis in his individual capacity were insufficiently pleaded. *See id.* at 10-13 & n.7.

In the course of his discussion, Judge Nickerson identified several vague allegations and "confusing aspects" of the Amended Complaint.  *Id.* at 7.  The poorly pleaded legal contentions aside, Judge Nickerson remarked that plaintiffs' claims were even "confusing as to exactly where this incident occurred. The Amended Complaint states that it occurred on 'Route 13 near Route US 95.'  Throughout the oppositions to Defendants' motions, Plaintiffs allege a pattern and practice of stopping African American drivers on 'US I-95 in Wicomico County.'"  *Id.* at 1-2 n.1.  "[H]owever," Judge Nickerson observed, "[n]o portion of Interstate 95 . . . goes through Wicomico County.  In fact, the portion of Wicomico County that is closest to any portion of Interstate 95 is almost 100 miles distant."  *Id.*  Judge Nickerson concluded, *id.* at 13-14:

> As is evident from the above discussion, Plaintiffs' counsel has exhibited a remarkable lack of care in his filings.  In addition to the confusion as to where this alleged incident took place, the Court notes that Plaintiffs' counsel, in his oppositions to both motions, has captioned this as an action against "Wisconsin County Sheriff, et al."  The briefings also included some sentences, or sentence fragments, that the Court has yet to definitively decipher.  For example, the first page of Plaintiff's Opposition to MSP's motion contains the following: "Since the filing of that motion, and English fonts to be motions to dismiss the original complaint, plaintiffs have filed an amended complaint pursuant to Federal Rule of Civil Procedural 15(a.)."[4]
>
> In light of these questionable causes of action—poorly pled and supported by confusing facts and argument—the Court determines that the best course of action is to dismiss the Amended Complaint and permit Plaintiffs' counsel to file, with considerably greater care, another amended complaint.  To allow the case to go forward as framed by the Amended Complaint as it now stands would only waste the resources of the parties and the Court.

---

[4] In a footnote, Judge Nickerson stated: "The Court suspects that counsel employed some form of voice recognition software or transcription service and never bothered to actually read what was transcribed." *Leftridge I*, ECF 20, at 13 n.8.

Accordingly, Judge Nickerson dismissed the Amended Complaint.  His Order directed: "Plaintiffs shall file an amended complaint within ten days of the date of this Order, *or the dismissal of the current Amended Complaint will be with prejudice*."  *Leftridge I*, ECF 21 (emphasis added).  Notably, the plaintiffs did not file another amended complaint within the next ten days.  No further orders were issued in the case.

The docket in *Leftridge I* reflects that Mr. Leftridge, apparently without legal representation, attempted to file a second amended complaint on October 14, 2011.  *See Leftridge I*, ECF 22-1.  By letter dated the same day, the court returned the second amended complaint to Mr. Leftridge, stating: "Case was ordered dismissed May 4, 2011, if plaintiffs did not file an amended complaint within 10 days of the date of the order."  *Leftridge I*, ECF 22.

This suit followed.  It was filed on December 2, 2011.

## Discussion

### A.  Defendants' Motion

Defendants seek dismissal of Mr. Leftridge's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure "to state a claim upon which relief can be granted."  Defendants' Motion is based on the doctrine of res judicata, which is also known as "claim preclusion."[5]  I agree with defendants in part: *Leftridge I* bars some, but not all, of plaintiff's

---

[5] Defendants' Motion is styled "in the alternative" as one for summary judgment, presumably because defendants rely on matter that is, strictly speaking, outside the pleadings—specifically, the record from *Leftridge I*.  However, "a federal court may consider matters of public record such as documents from prior . . . court proceedings in conjunction with a Rule 12(b)(6) motion."  *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009); *see also Brooks v. Arthur*, 626 F.3d 194, 200 (4th Cir. 2010) ("'[W]hen entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact.'") (citation omitted); *Anderson v. FDIC*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (holding that a district court may "properly take judicial notice of its own records").  Therefore, Defendants' Motion is properly reviewed as a motion to dismiss.  Nevertheless, if the record from *Leftridge I* could not be considered without conversion of Defendants' Motion to one for summary judgment, *see* Fed. Civ. P. 12(d), I would find

claims.  In particular, res judicata precludes plaintiff's claims against Sheriff Lewis in both his official and individual capacities, and bars his claims against all of the other defendants in their official capacities.[6]  However, for the reasons that follow, Mr. Leftridge's claims against Deputy Matthews and the Doe defendants in their individual capacities are not subject to res judicata as a result of the ruling in *Leftridge I*.

The Latin phrase "*res judicata*," translated literally into English as "a thing decided," *see* BLACK'S LAW DICTIONARY 1470 (rev. 4th ed. 1968), is the name of a legal doctrine that "bars a party from relitigating a claim that was decided or could have been decided in an original suit." *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008).  The doctrine was "designed to protect 'litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation.'"  *Id.* at 161-62 (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)); *see also Montana v. United States*, 440 U.S. 147, 153-54 (1979) (recognizing that res judicata avoids the "expense and vexation attending multiple lawsuits, conserves judicial resources," and avoids "inconsistent decisions").  In other words, it "serves not only 'the defendant's interest in avoiding the burden of twice defending a suit,' but also the important judicial interest in avoiding resolution of an issue that the court has already decided."  *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 (4th Cir. 2006) (citation omitted).

Under federal law,[7] a judgment rendered in a prior case will be given res judicata effect

---

conversion to be appropriate under the circumstances, and my ruling would be the same under a summary judgment standard.  Notably, plaintiff has had adequate notice of the possibility of conversion.  *See Laughlin v. Metro Wash. Airports Authority*, 149 F.3d 253, 261 (4th Cir. 1998); *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975); *see also* ECF 19.

[6] As I shall explain, to the extent that the official capacity claims are not barred by res judicata, they are barred by the Eleventh Amendment and § 1983.

[7] The applicable law for purposes of res judicata is the law of the tribunal in which the

in a subsequent lawsuit when three conditions are met: (1) the subsequent suit presents the "'same cause of action'" as the prior suit; (2) judgment was rendered "'on the merits'" in the prior suit; and (3) the subsequent suit involves "'the same parties or their privies'" as were involved in the prior lawsuit. *Ohio Valley Envt'l Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2009) (quoting *Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 42 (4th Cir. 1990)); *see Grausz v. Englander*, 321 F.3d 467, 472 (4th Cir. 2003).

It is abundantly clear that the first condition is met in this case. "In finding that the second suit involves the same cause of action, the court need not find that the plaintiff in the second suit is proceeding on the same legal theory he or his privies advanced in the first suit." *Ohio Valley*, 556 F.3d at 210. Rather, "[a]s long as the second suit 'arises out of the same transaction or series of transactions as the claim resolved by the prior judgment,'" the first suit will have preclusive effect." *Id.* (citation omitted). Indeed, "'[n]ewly articulated claims based on the same [transactional] nucleus of facts may still be subject to a res judicata finding if the claims *could have been brought* in the earlier action.'" *Laurel Sand & Gravel*, 519 F.3d at 162 (emphasis added) (citation omitted) (alteration in original).

This case involves claims concerning precisely the same traffic stop of December 1, 2008, which was at issue in *Leftridge I*. To the extent that any of the legal theories differ, they nonetheless arise from the same transactional nucleus of facts and thus are considered the "same cause of action" for res judicata purposes.

I am also satisfied that, at least in part, *Leftridge I* was a decision "on the merits" for purposes of res judicata, thereby satisfying the second condition for claim preclusion as to at least some of the claims. To be sure, Judge Nickerson did not resolve the underlying claim in

---

prior judgment was entered. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *Laurel Sand & Gravel*, 519 F.3d at 162. Because the judgment in *Leftridge I* was entered in federal court, I must apply federal law regarding res judicata.

*Leftridge I*, which alleged that Mr. Leftridge and his brother were subjected to racial discrimination and violations of their constitutional rights.  However, under Rule 41(b) of the Federal Rules of Civil Procedure, unless ordered otherwise, an involuntary dismissal based on any ground other than "lack of jurisdiction, improper venue, or failure to join a [necessary or indispensable] party under Rule 19" ordinarily "operates as an adjudication on the merits."

The decision in *Leftridge I* was based on two grounds.  First, the plaintiffs' § 1981 and § 1983 claims against state agencies and Sheriff Lewis in his official capacity were barred by state sovereign immunity under the Eleventh Amendment.[8]  Second, to the extent that claims were asserted under Title VI or against Sheriff Lewis in his individual capacity, they were not pleaded with sufficient particularity or plausibility to "state a claim upon which relief [could] be granted."  Fed. R. Civ. P. 12(b)(6).

It is an open question in the Fourth Circuit whether a dismissal on the basis of Eleventh Amendment immunity is a dismissal "on the merits" for res judicata purposes.  *See Andrews v. Daw*, 201 F.3d 521, 524 n.2 (4th Cir. 2000) (assuming "without deciding that a dismissal on Eleventh Amendment immunity grounds is a final judgment on the merits for purposes of res judicata").[9]  However, even if *Leftridge I* is not formally entitled to res judicata effect as to the

_____

[8] The claims also were dismissed based on the proposition that neither a state agency nor a state official sued in his official capacity is a "person" subject to suit under § 1983.  However, that doctrine is, itself, partly based on Eleventh Amendment concerns.  *See Will*, *supra*, 491 U.S. at 66-67 (stating that "in deciphering congressional intent as to the scope of § 1983, the scope of the Eleventh Amendment is a consideration, and we decline to adopt a reading of § 1983 that disregards it").

[9] Authority from other jurisdictions is divided.  Under Maryland state law, a dismissal on the basis of sovereign immunity is entitled to res judicata effect.  *See Kutzik v. Young*, 730 F.2d 149, 151 (4th Cir. 1984) (applying Maryland law) (citing *Annapolis Urban Renewal Auth. v. Interlink, Inc.*, 43 Md. App. 286, 291-96, 405 A.2d 313, 316-19 (1979)).  The law of some other states is to the same effect.  *See, e.g.*, *Flores v. Edinburg Consol. Indep. Sch. Dist.*, 741 F.2d 773, 775 n.3 (5th Cir. 1984) (applying Texas law).  However, a number of federal appellate courts have concluded that a dismissal based on Eleventh Amendment immunity is not a dismissal on

Eleventh Amendment issues, this is of little moment, because Mr. Leftridge's claims in this case against defendants in their official capacities are subject to dismissal for the same substantive reasons that those claims were dismissed in *Leftridge I*: states and their officials sued in their official capacities are entitled to Eleventh Amendment immunity from suit and are not "persons" subject to liability under § 1983.  *See Will*, *supra*, 491 U.S. 58.

As to the aspects of *Leftridge I* that were dismissed for failure to state a claim upon which relief could be granted, "unless otherwise specified, a dismissal for failure to state a claim under Rule 12(b)(6) is presumed to be both a judgment on the merits and to be rendered with prejudice."  *McLean v. United States*, 566 F.3d 391, 396 (4th Cir. 2009); *see also Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) (stating that a "dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits'" for purposes of res judicata).  In contrast, if the court specifies that a dismissal is without prejudice, there is no claim preclusion.  "Dismissals without prejudice do not bar subsequent suits by *res judicata*."  *Choice Hotels Int'l, Inc. v. Goodwin & Boone*, 11 F.3d 469, 473 (4th Cir. 1993).

Rule 41(b) provides that a court must expressly state that an involuntary dismissal is without prejudice for it not to be considered a judgment on the merits, but the rule commits to the discretion of the district court the decision whether to dismiss with or without prejudice.  *See*

---

the merits for res judicata purposes.  *See, e.g.*, *Darlak v. Bobear*, 814 F.2d 1055, 1064 (5th Cir. 1987); *Lacks v. Fahmi*, 623 F.2d 254, 256 (2d Cir. 1980); *see also Sterling v. United States*, 85 F.3d 1225, 1230 n.3 (7th Cir. 1996) (Flaum, J., concurring).  The confusion may arise because of the nature of sovereign immunity: it "has attributes of both subject-matter jurisdiction and personal jurisdiction," and "although Eleventh Amendment immunity is not strictly an issue of subject-matter jurisdiction, neither is it merely a defense to liability."  *Constantine v. Bd. of Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 480-82 (4th Cir. 2005).  The federal courts that have held that a dismissal on the basis of Eleventh Amendment immunity is not res judicata have reasoned that the Eleventh Amendment bars claims against states in federal courts, but not the states' own courts.  Therefore, a dismissal based on Eleventh Amendment immunity in federal court should not prevent the plaintiff from pursuing his or her claim in a state court of competent jurisdiction.  *See, e.g.*, *Darlak*, 814 F.2d at 1064.

*Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204 (4th Cir. 2006).  As guidance for the district judges in the exercise of their discretion, the Fourth Circuit has endorsed the following statement from the WRIGHT & MILLER treatise:

> "A dismissal under Rule 12(b)(6) generally is not final or on the merits and *the court normally will give plaintiff leave to file an amended complaint*.  The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that plaintiff be given every opportunity to cure a formal defect in his pleading.  This is true even though the court doubts that plaintiff will be able to overcome the defects in his initial pleading.  Amendment should be refused only if it appears to a certainty that plaintiff cannot state a claim.  The better practice is to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the court will be able to determine conclusively on the face of a defective pleading whether plaintiff actually can state a claim."

*Ostrzenski v. Seigel*, 177 F.3d 245, 252-53 (4th Cir. 1999) (quoting 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 360-67 (2d ed. 1990)) (emphasis in *Ostrzenski*) (footnotes omitted in *Ostrzenski*).

In *Leftridge I*, Judge Nickerson expressly granted plaintiffs the opportunity to amend their complaint, but warned that if they failed to do so, the dismissal would be with prejudice. Therefore, after the *Leftridge I* plaintiffs failed to file an amended complaint within the time allotted by Judge Nickerson, his Order became an adjudication "on the merits" for purposes of res judicata.  The Fourth Circuit's decision in *Choice Hotels*, *supra*, 11 F.3d 469, is salient.

*Choice Hotels* concerned the res judicata effect of a voluntary dismissal under Rule 41(a)(2), rather than a Rule 41(b) involuntary dismissal, as in *Leftridge I*.  A key distinction between Rule 41(a)(2) and Rule 41(b) arises when the district court does not state whether the dismissal is with or without prejudice.  The text of the two rules specifies different results: such a dismissal under Rule 41(a)(2) is without prejudice; under Rule 41(b), it is with prejudice. Despite this important distinction between the two rules, *Choice Hotels* remains instructive.

In *Choice Hotels*, which originated in this district, the parties reached a tentative settlement, of which they informed the district court. In response, the court entered an order, pursuant to Local Rule 111, dismissing the complaint with the following caveat: "'The entry of this Order is without prejudice to the right of a party to move for good cause within 30 days to reopen this action if settlement is not consummated.'" *Choice Hotels*, 11 F.3d at 470 (quoting order). The parties continued negotiating the details of settlement after the thirty-day period elapsed. Seven months after entry of the Local Rule 111 order, the defendant refused to sign a proposed final settlement agreement proffered by the plaintiff. *Id.* The plaintiff then filed a new lawsuit against the defendant, identical to the first suit. *Id.* The defendant filed a motion to dismiss the second lawsuit on the basis of res judicata, which the district court granted. *Id.*

The Fourth Circuit reversed. It observed that a district court is entitled to "dismiss the plaintiff's action without prejudice but with conditions that the plaintiff must satisfy, and to specify that the dismissal will become prejudicial if the plaintiff fails to satisfy the conditions." *Id.* at 471. However, it also stated: "Rule 41(a)(2) is silent as to *how* a district court must specify that its voluntary dismissal is prejudicial if its stated conditions are not met . . . ." *Id.* (emphasis in original). On grounds of fundamental fairness, constitutional due process, and the Fourth Circuit's longstanding "'policy of deciding cases on their merits,'" the *Choice Hotels* Court held that "the Rule requires the district court's specification to be explicit and clear." *Id.* (citation omitted). The Court reversed the dismissal on the basis of res judicata, because the order dismissing the original lawsuit "obviously was not explicit. . . . [N]owhere did the dismissal order state *explicitly* that the dismissal would be prejudicial if its condition was not satisfied." *Id.* at 472-73 (emphasis in original).[10] Accordingly, the Court held that the "dismissal of [the]

---

[10] Because the order was not "explicit," the *Choice Hotels* Court declined to resolve whether it had been "clear." *Choice Hotels*, 11 F.3d at 472-73 & nn.3-4.

first action was without prejudice," and not entitled to res judicata effect.  *Id.* at 473.

The *Choice Hotels* Court concluded, *id.* (internal citation omitted):

> We feel it important to add that this opinion does not concern the authority of district courts, exercising their discretion, to require that plaintiffs meet certain conditions when their actions are dismissed without prejudice.  Nor does it concern their authority to ensure that these conditions are met by making the dismissals prejudicial if plaintiffs fail to meet them.  It holds only that when district courts choose to impose such conditions on plaintiffs and to enforce them with the "harsh sanction" of prejudicial dismissal, they must make the threat of this sanction explicit and clear so that there can be no question . . . as to whether a plaintiff who did not satisfy the conditions understood that, by not satisfying them, he faced prejudicial dismissal.

Here, Judge Nickerson's Order in *Leftridge I* could not have been more clear or explicit as to its prejudicial effect.  It expressly stated: "Plaintiffs shall file an amended complaint within ten days of the date of this Order, *or the dismissal of the current Amended Complaint will be with prejudice*."  *Leftridge I*, ECF 21 (emphasis added).  Accordingly, I conclude that *Leftridge I* was a decision "on the merits" for res judicata purposes.

Finally, I consider the third condition for application of res judicata: that this lawsuit must involve "the same parties or their privies" as in *Leftridge I*.  As I shall explain, this condition is met as to Sheriff Lewis in both his individual and official capacities, but is met as to the other defendants only in their official capacities.

Preliminarily, it is clear that the "same parties or their privies" requirement is met as to Mr. Leftridge.  He was one of the plaintiffs in *Leftridge I*, and is the only plaintiff in this suit.  In his Surreply, Mr. Leftridge argues that he "was not involved in the litigation" of *Leftridge I*, and "never prosecuted the action as a pro se."  Surreply at 2.  However, Mr. Leftridge misapprehends the nature of res judicata.  The fact that he was represented by counsel in *Leftridge I*, but is self-represented here, makes no difference.  Res judicata binds the "parties or their privies."  If a judgment on the merits was entered against a party as to a claim in an earlier lawsuit, it precludes

relitigation of the same claim in a second lawsuit, regardless of whether the party is represented in the second lawsuit by the same attorney, a different attorney, or no attorney at all.

Next, it is clear that the "same parties or their privies" requirement is met as to Sheriff Lewis.  In *Leftridge I*, he was a named defendant in both his individual capacity and his official capacity.  He is also a named defendant here, in both capacities.  Thus, all three criteria for res judicata are met as to Sheriff Lewis, and plaintiff's claims against him will be dismissed.

With respect to the other defendants, the issue is more complex.  Neither Deputy Matthews nor any of the Doe defendants was named as a party in *Leftridge I*.[11]  To be sure, res judicata may bar a lawsuit against a defendant who is in privity with a defendant in an earlier lawsuit.  However, "privity is an elusive concept." *Martin v. Am. Bancorp. Retirement Plan*, 407 F.3d 643, 651 (4th Cir. 2005).  As the Fourth Circuit has indicated, "privity" is "'merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata.'" *Id.* (quoting *Nash v. County Bd. of Educ. v. Biltmore Co.*, 640 F.3d 484, 494 (4th Cir. 1981)).  Indeed, the Court has echoed WRIGHT & MILLER's recommendation "that the privity label either be discarded entirely or 'retained as no more than a convenient means of expressing conclusions that are supported by independent analysis.'" *Martin*, 407 F.3d at 651 n.16 (quoting 18A WRIGHT & MILLER, § 4448, at 327 (2d ed. 2002)).

Nevertheless, the Fourth Circuit has said: "To be in privity with a party to a former litigation, the non-party must be 'so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved.'" *Martin*, 407 F.3d at 651 (citation omitted).  The Court has recognized three general "categories of non-parties

---

[11] Of course, the identities of the Doe defendants are not presently before the Court.  But, the only individually named defendant in *Leftridge I* was Sheriff Lewis.

who will be considered in privity with a party to the prior action and who will therefore be bound by a prior adjudication": first, a "non-party who controls the original action"; second, a "successor-in-interest to a prior party"; and third, a "non-party whose interests were adequately represented by a party to the original action," a narrow concept that the Fourth Circuit has also termed "virtual representation." *Id.* (citing *Klugh v. United States*, 818 F.2d 294 (4th Cir. 1987)).

Circuit precedent compels the conclusion that, in their individual capacities, Deputy Matthews and the Doe defendants are not in privity with the defendants in *Leftridge I*. In *Andrews v. Daw*, *supra*, 201 F.3d 521, the Fourth Circuit held that a "government employee in his official capacity is not in privity with himself in his individual capacity for purposes of res judicata." *Id.* at 523. It follows from *Andrews* that Mr. Leftridge's individual capacity claims against Deputy Matthews and the Doe defendants are not barred by *Leftridge I*.

*Andrews*, like this case, concerned § 1983 claims arising out of a traffic stop. The plaintiff filed his first lawsuit against three defendants: the North Carolina state highway patrolman who pulled him over, the commander of the North Carolina Highway Patrol, and the state of North Carolina. *See id.* at 523. The district court dismissed the first lawsuit, and the Fourth Circuit affirmed, on the basis that North Carolina enjoyed Eleventh Amendment immunity from suit, and that the highway patrolman and commander had only been sued in their official capacities and thus enjoyed the same immunity. *See id.* at 523-24; *see also Andrews v. Daw*, 117 F.3d 1413, 1997 WL 375096, at *1 (4th Cir. July 7, 1997) (unreported) (per curiam). Notably, it is well settled that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will*, *supra*, 491 U.S. at 71.

Thereafter, the plaintiff in *Andrews* filed a second suit solely against the highway patrolman in his individual capacity. *Andrews*, 201 F.3d at 524. The district court dismissed the second suit on the basis of res judicata, but the Fourth Circuit reversed. *Id.* The Fourth Circuit endorsed § 36(2) of the RESTATEMENT (SECOND) OF JUDGMENTS, which provides that a "'party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity.'" *Andrews*, 201 F.3d at 525 (quoting RESTATEMENT). In support of its conclusion, the *Andrews* Court closely analyzed *Kentucky v. Graham*, 473 U.S. 159 (1985), in which the Supreme Court sharply distinguished between personal capacity claims and individual capacity claims. In reasoning that is persuasive here, the *Andrews* Court said:

> While "[p]ersonal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent" and in essence are "suit[s] against the entity." Because the real party in interest in an official-capacity suit is the entity, a plaintiff can only recover damages from the entity itself, in contrast to a personal-capacity suit, in which a plaintiff can seek a judgment against the official's personal assets. Furthermore, different legal theories of liability are required for the plaintiff, and different defenses are available to the defendant, in a personal-capacity action than in an official-capacity action. These differences indicate that a government official in his official capacity does not represent "precisely the same legal right" as he does in his individual capacity.

*Andrews*, 201 F.3d at 525 (quoting *Graham*) (internal quotation marks omitted in *Andrews*).

The Fourth Circuit recently reiterated *Andrews*'s holding in *Brooks v. Arthur*, 626 F.3d 194 (4th Cir. 2010), again rejecting a "transitive theory of capacities." *Id.* at 200. In reversing the district court's dismissal of § 1983 claims against the plaintiff's supervisors in their individual capacities, after the plaintiff's governmental employer had prevailed in a prior administrative proceeding, the *Brooks* Court held that *Andrews* controlled, even though there was "no material distinction between the theories of liability" in the court case and the administrative

proceeding.  *Id.* at 203.  The *Brooks* Court emphasized "the differences in the legal landscape when a defendant is sued in his individual—as opposed to his personal—capacity," *id.* at 203, stemming from the "legal fiction about individuals having two separate identities: one identity (or capacity) as an official representative of either the government or a corporation; and a separate identity (or capacity) as an individually autonomous human being." *Id.* at 201.

As I see it, *Andrews* and *Brooks* compel the conclusion that plaintiff's individual capacity claims against Deputy Matthews and the Doe defendants are not subject to res judicata, notwithstanding the prior dismissal of plaintiff's claims against Sheriff Lewis and the MSP.  To the extent that the claims in *Leftridge I* were official capacity claims against a state official or claims against a state agency (both of which, as *Will* teaches, are "no different from a suit against the State itself," 491 U.S. at 71), *Andrews* and *Brooks* dictate that plaintiff's individual capacity claims against different defendants are not barred.

Nor can I conclude that the dismissal of plaintiffs' claims against Sheriff Lewis in his individual capacity in *Leftridge I* constitutes res judicata as to Mr. Leftridge's individual capacity claims against Deputy Matthews and the Doe defendants here.  Notably, there is no assertion in either *Leftridge I* or this case that Sheriff Lewis personally participated in the traffic stop of plaintiff's vehicle.  At most, plaintiff's claims asserted supervisory liability against Sheriff Lewis.  The prior dismissal of claims in *Leftridge I* is res judicata as to any supervisory liability claim against Sheriff Lewis in his individual capacity, but does not foreclose plaintiff's assertion of individual capacity claims against other defendants.

Defendants cite a number of cases that articulate the proposition that "a plaintiff 'cannot avoid the bar of res judicata by bringing in additional [defendants].'"  *Csabai v. Martek Biosciences Corp.*, Civ. No. CCB-11-316, 2011 WL 1831777 at *3 (D. Md. May 12, 2011)

(quoting *Bedrock Servs. v. Int'l Bhd. of Elec. Workers Local Union Nos. 238, 342, & 495*, 285 F. Supp. 2d. 693, 699 (W.D.N.C. 2003), in turn quoting *Bethesda Lutheran Homes & Servs., Inc. v. Born*, 238 F.3d 853, 857 (7th Cir. 2001)) (alteration in *Bedrock*); *see also Bond v. Blum*, Civ. No. JFM-07-1385, 2007 WL 5921363, at *2 n.7 (D. Md. June 25, 2007) (citing *Dreyfus v. First Nat'l Bank of Chicago*, 424 F.2d 1171, 1175 (7th Cir. 1970)), *aff'd*, 294 F. App'x 70 (4th Cir. 2008), *cert. denied*, 555 U.S. 1172 (2009); *White v. Harris*, 23 F. Supp. 2d 611 (D. Md. 1998).  *See* Defendants' Motion at 10.  However, none of the cases upon which defendants rely concerned the distinction between individual capacity claims and official capacity claims.  Moreover, none of them cited or discussed *Andrews* or *Brooks*.

Without belaboring the point, it is also clear that most, if not all, of the cases are distinguishable on additional grounds.  For instance, in several of the cases, although the court relied upon res judicata to dismiss claims as to parties who were parties to the previous action, it rejected the claims regarding the newly added parties for other reasons.  *See, e.g.*, *Bethesda Lutheran*, 238 F.3d at 857 (claims regarding new parties dismissed, because new parties lacked standing); *Bedrock*, 285 F. Supp. 2d at 700 (same); *White*, 23 F. Supp. 2d at 616 (claims against the only new party had previously been dismissed for failure to state a claim).  And in others, it appears likely that the additional parties were in privity with the original parties under one of the theories enumerated in *Martin*, *supra*.  *See, e.g.*, *Csabai*, 2011 WL 1831777, at *1-3 (additional defendants were a board member of original defendant company and a company that was the successor-in-interest by subsequent acquisition of the original defendant company); *Bond*, 2007 WL 5921363, at *1 ("Three of the newly named defendants are partners in the law firms who were defendants in the earlier case and one of the newly named defendants is counsel for [the prior defendants].").

In any event, I need not further explore the contours of the principle that a party cannot avoid res judicata by adding new parties. Regardless of the scope of that principle, its application to this case is foreclosed by *Andrews* and *Brooks*, which are controlling as to the issue of res judicata in the context of individual capacity and official capacity claims.

Nevertheless, Mr. Leftridge's claims against Deputy Matthews and the Doe defendants in their official capacities will be dismissed. Deputy Matthews and the Doe defendants are all Maryland state officials.[12] As noted, the claims against them in their official capacities are the functional equivalent of claims against the State of Maryland itself, as were the claims against the MSP and Sheriff Lewis in his official capacity in *Leftridge I. See Will*, *supra*, 491 U.S. at 71. Thus, the official capacity claims in this case are claims against the "same parties or their privies" as in *Leftridge I*, and are barred by res judicata.[13]

For the foregoing reasons, plaintiff's claims against Sheriff Lewis in both his official and individual capacities, and his claims against Deputy Matthews and the Doe defendants in their official capacities, will be dismissed. The claims against Deputy Matthews and the Doe defendants in their individual capacities remain viable.

### B. Plaintiff's Motions

Plaintiff's motions all lack merit, and little need be said about most of them. As to the motions seeking a default judgment against defendants, none of the defendants is in default. Sheriff Lewis and Deputy Matthews responded to plaintiff's complaint by timely filing their

---

[12] The Doe defendants (with the exception of the canine) are all law enforcement officers with either the Wicomico County Sheriff's Office or the MSP. *See, e.g.*, *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 375-77 (D. Md. 2011) (stating that Maryland county sheriffs and their deputies are employees of the State of Maryland); *Thompson v. Dorsey*, Civ. No. ELH-10-1364, 2011 WL 2610704, at *4 n.4 (D. Md. June 30, 2011) (MSP is a state agency).

[13] As noted, even if the official capacity claims are not subject to res judicata, they clearly are barred by the Eleventh Amendment and are not cognizable under § 1983.

Motion, as permitted by Rule 12 of the Federal Rules of Civil Procedure.  None of the other defendants has yet been served with process, and so they are not yet under any obligation to respond to Mr. Leftridge's complaint.  As to Mr. Leftridge's request for a "protective order," it is denied for the same reasons already discussed in the Court's Order of March 1, 2012 (ECF 20), which denied an earlier request by Mr. Leftridge for an "immediate protective order."

Mr. Leftridge's "Motion for Contempt and Rule 11 Sanctions" (ECF 21) is also without merit.  Rule 11 is a bulwark against frivolous claims.  Although I have denied Defendants' Motion, in part, defendants' arguments were not frivolous.[14]  Indeed, the reverse is closer to the truth: most of plaintiff's motions are utterly lacking in foundation, and contain invective that inappropriately impugns defendants and their counsel and, at the very least, is actually counterproductive to Mr. Leftridge and presents his claims in an unfavorable light.[15]

Defendants ask the Court to "direct Plaintiff to immediately refrain from filing further requests for relief which lack any cognizable legal basis and/or which are unsupported by factual contentions having evidentiary support, upon penalty of leave to be granted by the Court to the Defendants to seek sanctions against the Plaintiff in the form of costs for defending baseless and unsupported motions."  ECF 32 at 6.  In light of plaintiff's self-represented status, the Court will not enter such an order at this juncture.  However, plaintiff is admonished to comply with the Federal Rules of Civil Procedure and the Local Rules in all future filings,[16] and to refrain from

---

[14] Even if defendants' arguments had been frivolous, plaintiff did not comply with the procedural prerequisites for seeking sanctions under Rule 11.  *See* Fed. R. Civ. P. 11(c)(2).

[15] For instance, in his motion for contempt and Rule 11 sanctions, plaintiff states: "Defendant Kelly Matthews raises a frivolous res jucada [sic] claim that he is Mr. Untouchable, can spit anytime on the U.S. Constitution, laws, obstruct justice and break federal civil rights statues [sic] when he feels like it[.]"  ECF 21 at 2-3.

[16] *See* note 3, *supra*.  The Local Rules are available on the Court's website: http://www.mdd.uscourts.gov/localrules/LocalRules.pdf.

filing papers that are frivolous or are "presented for any improper purposes, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1).

Plaintiff's "Motion for Order and Motion for Leave to Conduct Limited Discovery Prior to the Time Specified in Rule 26(d)" (ECF 27) also merits some additional discussion. Plaintiff seeks an order directing defendants to provide him with the names, addresses, and other contact information and personally identifying information of the Doe defendants. Much of the content of plaintiff's motion is drawn *verbatim* from this Court's recent opinion in *Shriner v. Annapolis City Police Dept.*, Civ. No. ELH-11-2633, 2012 WL 959380 (D. Md. Mar. 19, 2012). The procedural posture of this case is different from that of *Shriner* in several ways. The plaintiffs in *Shriner* were represented by counsel. They knew the identity of the defendant at issue and had made a number of unsuccessful attempts to serve him. The defendant was no longer employed by the state agency (which was also a defendant) that had employed him at the time of the events at issue in the lawsuit. Therefore, the state agency could not accept service on his behalf, and it had refused to provide the plaintiffs with contact information in its possession for the defendant, based on its erroneous assertion that such information was privileged from discovery. No motion to dismiss as to the unserved defendant was pending.

In this case, plaintiff certainly will be entitled to seek, through discovery, the identities of the Doe defendants. Moreover, if defense counsel will not accept service on behalf of the Doe defendants, plaintiff will be entitled to effect service on the Doe defendants, which may necessitate disclosure to plaintiff of the Doe defendants' addresses and/or other information.

However, discovery has not yet commenced in this case, *see* Local Rule 104.4, and so defendants and their counsel are not presently obligated to make disclosures to plaintiff. It is also salient that here, unlike in *Shriner*, the agencies that employ the Doe defendants are not

parties themselves.  Moreover, it is within this Court's discretion whether to permit preliminary discovery of the nature directed in *Shriner*.  As I recognized in *Shriner*, although addresses and other personal information of state employees are not privileged from discovery, they are made confidential under Maryland state law, and judicial safeguards as to the confidentiality of such information, such as the entry of protective orders or *in camera* review, are entirely appropriate. The logistics of implementing such safeguards are considerably more complicated when one of the parties is self-represented.

At the present juncture, plaintiff's motion for preliminary discovery will be denied. However, a scheduling conference will be set, at which the parties and the Court will discuss the appropriate schedule for this case, including discovery as to the identities of the Doe defendants.

### Conclusion

For the foregoing reason, Defendants' Motion (ECF 18), construed as a motion to dismiss under Fed. R. Civ. P. 12(b)(6), will be granted in part and denied in part.  Plaintiff's several motions (ECF 21, 23, 27, 28, 30, and 31) will be denied.  An appropriate Order follows.


Date:   April 18, 2012                                   _____/s/_____
                                                         Ellen Lipton Hollander
                                                         United States District Judge